UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IVETTE RIVERA,

Plaintiff,

v.

EAST BAY MUNICIPAL UTILITY DISTRICT, et al.,

Defendants.

Case No. 25-cv-03090-JD

**ORDER RE DISMISSAL AND STAY**

Pro se plaintiff Ivette Rivera has sued the East Bay Municipal Utility District (EBMUD), several of its individual directors and employees, the local and global chapters of the American Federation of State, County and Municipal Employees (AFSCME), and the president of AFSCME Local 444. Dkt. No. 58 ¶¶ 8-15. Rivera's first amended complaint (FAC) alleges claims of retaliation and race-based discrimination under various federal and California state statutes. *Id.* ¶¶ 38-83. Defendants ask to dismiss the FAC. *See* Dkt. Nos. 59, 60. The parties' familiarity with the record is assumed, and the FAC is dismissed.

**BACKGROUND**

This suit is the latest in a series of disputes between Rivera and defendants. Rivera has been employed by EBMUD since 2005, when she was hired as a Gardener Foreman, and she is represented by AFSCME Local 444. Dkt. No. 58 ¶¶ 7, 14. In 2015, Rivera sued EBMUD for sex-based discrimination, claiming that it "refus[ed] to conduct a classification study [to] reclassify her as a supervisor" and "refus[ed] to pay her the same wages as the comparator positions." *Rivera v. E. Bay Mun. Util. Dist.*, 799 Fed. App'x. 481, 483 (9th Cir. 2020). She also claimed that, after she raised these issues with EBMUD's Board and the Equal Employment Opportunity Commission, EBMUD unlawfully "retaliated against her by giving her negative reviews, issuing her counseling

memorandums, and reducing her supervisory duties." *Id.* In the same suit, Rivera brought Title VII claims against Local 444. *Id.* at 484. She later dismissed the claims against Local 444, Dkt. No. 60 at 7, and eventually settled the action with EBMUD, Dkt. No. 59, at 9.

Rivera again sued EBMUD and several of its directors and employees in 2024. The suit alleged "claims of retaliation and sex-based discrimination under various state and federal statutes." *Rivera v. E. Bay Mun. Util. Dist.*, No. 24-cv-02491-JD, 2025 WL 621992, at *1 (N.D. Cal. Feb. 25, 2025). The claims related primarily to unfavorable performance reviews, a classification study, denials of overtime, and disputes with supervisors. *Id.* The Court related the 2024 suit to this case. Dkt. No. 17. After narrowing the claims in the 2024 suit to two Title VII retaliation claims, the Court granted judgment in favor of EBMUD. *See* Case No. 3:24-cv-02491-JD, Dkt. No. 61.

Rivera filed this lawsuit in 2025. *See* Dkt. No. 1. The Court dismissed the original complaint with leave to amend, Dkt. No. 57, and the admonition that a subsequent complaint should not "allege claims that have been dismissed, settled or otherwise terminated in other cases," nor claims "that are already pending in the [2024 suit] against EBMUD." *Id.* at 1. Rivera filed the FAC, which alleges seventeen claims under various state and federal statutes. Dkt. No. 58 ¶¶ 38-83. The gravamen of her new factual allegations is that EBMUD and its employees subjected Rivera to racial discrimination by declining to change her status to "Supervisor" through the classification study (which was completed in April 2024), *id.* ¶ 21, and retaliated against her because of her statements about the claimed discrimination, *id.* ¶¶ 17-18, 25-26. Rivera also faults AFSCME for "colluding with" EBMUD and for failing to investigate her complaints against it. *Id.* ¶¶ 24, 29. These events are said to have occurred between April and November of 2024. EBMUD and its employees (the EBMUD defendants) moved to dismiss the complaint. Dkt. No. 59. So did the AFSCME chapters and the Local 444 president (the Union defendants). Dkt. No. 60. The motions were taken under submission without oral argument. Dkt. No. 65.

## LEGAL STANDARDS

Rivera is proceeding pro se, so her "complaint is read generously and with a forgiving eye." *Lovelady v. U.S. Customs & Border Prot.*, No. 24-cv-00075-JD, 2025 WL 523901, at *1

(N.D. Cal. Feb. 18, 2025), *aff'd*, 2026 WL 2111320 (9th Cir. July 22, 2026). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff's burden to provide the "'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). In other words, "[a] complaint must proffer 'enough facts to state a claim to relief that is plausible on its face.'" *Red v. Heck*, No. 20-cv-02853-JD, 2020 WL 6562305, at *1 (N.D. Cal. Nov. 9, 2020) (quoting *Twombly*, 550 U.S. at 570). Although all factual allegations must be accepted as true, and all reasonable inferences made in the plaintiff's favor, "the Court will not credit conclusory statements or speculation or legal conclusions dressed up as fact." *Lovelady*, 2025 WL 523901, at *1.

## DISCUSSION

### I. SECTION 1983 CLAIMS

#### A. Retaliation Claim Against the Individual Defendants

In Count I of the FAC, Rivera alleges a claim of retaliation against each of the individual defendants under 42 U.S.C. §§ 1981 and 1983. To state a claim of unconstitutional retaliation against a government employer, a plaintiff must show "(1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2006) (internal citations omitted).

For the individual defendants Clifford Chan, Cindy Charan, and David Briggs, [1] Count I stumbles on the second and third elements. The FAC cataloged a plethora of adverse employment actions said to have followed Rivera's comments about discrimination and legal claims against EBMUD. These actions included negative performance evaluations, exclusion from a discussion in which her Hispanic male counterpart was permitted to participate, denial of overtime, job

[1] The FAC did not tie the allegedly retaliatory actions to any one individual. The Court assumes for present purposes that they are attributable to at least one of these individual defendants, who each hold managerial and supervisory roles above Rivera at EBMUD.

reclassification without a pay increase, and a reduction of supervisory duties. Dkt. No. 58 ¶¶ 16-18, 25-26.

"Speech by public employees about unlawful discrimination in the workplace" is protected speech, *Ballou v. McElvain*, 29 F.4th 413, 430 (9th Cir. 2022), and adverse action is broadly defined to include any action "reasonably likely to deter [the employee] from engaging in protected activity," *Coszalter*, 320 F.3d at 976 (cleaned up). Even so, Rivera's allegations do not plausibly allege that the reclassification study and discussion about it were adverse employment actions. Aside from many conclusory statements that the study was a "bad-faith" effort, Dkt. No. 58 ¶ 26, Rivera did not allege any facts indicating that the change to her job title was reasonably likely to deter her speech. The study alone does support a claim of retaliation.

The FAC also did not plausibly allege that retaliation was a substantial or motivating factor behind the actions. A plaintiff can show that retaliation was a substantial or motivating factor through evidence of "proximity in time" between the speech and the action, an employer-defendant's "expressed opposition" to the speech, or pretext. *Coszalter*, 320 F.3d at 977 (cleaned up). Rivera did not specify the supervisory duties that she lost or the timing of any reduction in duties, and so she did not adequately allege retaliatory motivation by pretext or proximity. *See* Dkt. No. 58 ¶ 26. Allegations that overtime was denied suffer the same shortcoming. *Id.* Although a negative performance evaluation for 2024 is said to have occurred within five months of the filing of her 2024 suit against EBMUD, Rivera also received negative evaluations in 2021, 2022, and 2023. *See* Case No. 3:24-cv-02491-JD, Dkt. No. 25 ¶¶ 9, 11, 15. This long record of negative performance evaluations undercuts the plausibility of the suggestion that the 2024 evaluation was motivated by retaliation. Overall, Count I does not plausibly state a claim against Chan, Charan, or Briggs.

To the extent that Count I concerns defendant Eric Larsen as the president of AFSCME Local 444, which is not entirely clear, it did not allege facts that might establish liability against him. Rivera says that Larsen received emails in which she expressed dissatisfaction with her reclassification and requested that he act against EBMUD's alleged discrimination. Dkt. No. 58 ¶¶ 21, 29. But declining to take a union member's requested course of action is neither an adverse

employment action nor suggestive of retaliatory motivation. *See Abdul-Haqq v. Permanente Med. Grp., Inc.*, No. 3:19-cv-03727-JD, 2022 WL 617125, at *2 (N.D. Cal. Mar. 2, 2022), *aff'd*, 2024 WL 1155449 (9th Cir. Mar. 18, 2024), (citing *Demetris v. Transp. Workers Union of Am.*, 862 F.3d 799, 805 (9th Cir. 2017)). Count I consequently fails to state a claim against Larsen.

**B. Race Discrimination Claims**

In Counts II and III of the FAC, Rivera alleges that defendant Chan, the general manager of EBMUD, and defendant Charan, EBMUD's human resources director, committed racial discrimination against her in violation of 42 U.S.C. §§ 1981 and 1983. Dkt. No. 58 ¶¶ 38-39. She says that they did so by "ratifying the bad faith classification study" in which her position title was changed without a change in pay. *Id.* ¶¶ 26, 30-31. She also says that Charan and Chan "ratif[ied] the reclassification" of a white man to the position of Water Reclamation Operator in 2018, and that Chan "ratified the reclassification" of a non-Hispanic individual to the position of "Senior Business Analyst System Analyst" in 2019. *Id.* ¶¶ 30-31.

These allegations fall short. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Sampson v. Cnty. of L.A.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (cleaned up). Rivera did not say how Chan and Charan's act to ratify her classification plan might have differed from their ratification of other classification plans. Nor did she explain why her classification plan was "fraudulent" or "bad faith." Dkt. No. 58 ¶¶ 26, 30. But even assuming for present purposes that Rivera's classification plan somehow differed from those of other employees, Rivera has not plausibly pled facts supporting a finding of discriminatory intent. The only allegation that might be said to suggest it is her claim that two non-Hispanic employees received more favorable reclassifications. But evidence of disparate impact is insufficient to show discriminatory intent unless the impact is "unexplainable on grounds other than race." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). The fact that two non-Hispanic employees with very different job titles received reclassifications years earlier that Rivera views as more favorable than her own does not allow the Court to "draw the reasonable inference" that Chan and



United States District Court
Northern District of California

Charan acted with racially discriminatory intent. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. TITLE VII CLAIMS

Counts XVI and XVII of the FAC tread much of the same ground as Counts II and III. These counts raise a failure-to-promote claim under Title VII against EBMUD for its refusal to reclassify Rivera to her desired position, and a general race discrimination claim against EBMUD and the union defendants. Dkt. No. 58 ¶¶ 78-83. Stating a claim under Title VII requires that the plaintiff allege facts that give rise to an inference of intentional discrimination, or to allege that "employees similarly situated to the plaintiff but who do not belong to the protected group at issue were treated differently than the plaintiff." *Guay v. City of L.A.*, No. 2:24-cv-5839-SVW, 2024 WL 6082007, at *4 (C.D. Cal. Dec. 16, 2024); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss.").

As with Counts II and III, Rivera's failure-to-promote theory in Count XVI did not state a claim and is dismissed. The claim appears to relate to the classification study that changed Rivera's title but did not classify her as a supervisor or increase her pay as desired. The FAC states repeatedly but in purely conclusory terms that the classification study was "fraudulent" and "bad faith," Dkt. No. 58 ¶ 26, but it does not offer any reason to believe that the study was backed by discriminatory intent. Nor did the FAC allege that similarly situated, non-Hispanic employees were treated differently than Rivera. The two non-Hispanic employees whose classification studies are said to have resulted in promotions were a water reclamation operator and a business analyst -- not gardeners -- and their promotions took place years before Rivera's classification study. *Id.* ¶¶ 30-31.

So too for the race discrimination claim in Count XVII, which is unsupported by factual allegations. Despite a meandering list of various events, the FAC offered no plausible evidence beyond the actions already discussed to support its repeated statements that EBMUD engaged in "discriminatory practices" and "disparate treatment." Dkt. No. 58 ¶ 23. And although it is unlawful for a labor organization to discriminate against any member because of his race, 42 U.S.C. § 2000e-2(c), the FAC suggests no facts that would support such a finding here. The

union defendants' failure to take up or process Rivera's complaints against EBMUD does not alone permit an inference of discriminatory intent, *see Abdul-Haqq*, 2022 WL 617125, at *2, and the FAC is completely devoid of corroborating allegations or a similarly situated comparator. Count XVII is consequently dismissed.

## III. STATE LAW CLAIMS

Counts IV-XV of the FAC raise claims for relief under only California state law. Dkt. No. 58 ¶¶ 41-77. The Court declines to exercise supplemental jurisdiction over these claims after "dismiss[ing] all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007).

## CONCLUSION

Rivera did not plausibly allege facts on which relief can be granted for the federal claims. Plaintiff has already been provided an opportunity to amend her claims, which follow years of litigation on a very similar subject matter. A good argument could be made that further amendment would serve little purpose. Even so, Rivera may file by November 20, 2026, a second amended complaint that is consistent with this order. No new claims or parties may be added without the Court's prior consent. A failure to meet this deadline or otherwise conform to this order will result in dismissal of the case under Federal Rule of Civil Procedure 41(b). The case is stayed in all other respects pending further order.

**IT IS SO ORDERED.**

Dated: October 27, 2026

JAMES DONATO
United States District Judge

United States District Court
Northern District of California